

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.                                                    CRIMINAL NO. 2:20cr26-KS-MTP

WADE ASHLEY WALTERS                                   18 U.S.C. § 1349
                                                      18 U.S.C. § 1347
                                                      18 U.S.C. § 1956(h)
                                                      18 U.S.C. § 1957

**The United States Attorney Charges:**

At all times relevant to this Information:

## GENERAL ALLEGATIONS

### Defendant and Introduction

1.      **WADE ASHLEY WALTERS ("WALTERS")**, of Lamar County, Mississippi, co-owned and operated several companies and pharmacies located in the Southern District of Mississippi, and elsewhere, that procured prescriptions for and ultimately dispensed compounded medications to individuals throughout the United States.

2.      As detailed herein, approximately between August 2012 and January 2016, **WALTERS** conspired to and engaged in a scheme to defraud the United States and numerous health care benefit programs of more than $287 million.  To that end, **WALTERS** and his co-conspirators fraudulently formulated, caused to be prescribed, dispensed, shipped, and billed insurance companies for, compounded medications produced and dispensed by several compounding pharmacies, including pharmacies that **WALTERS** owned and controlled.  **WALTERS'** scheme to dispense these compounded medications in the form of topical creams and vitamins to thousands of Americans circumvented federal regulations and approvals regarding use and efficacy, and

further exploited the manner in which health insurance companies reimbursed the dispensation of compounded medications. During the same time frame, **WALTERS** also knowingly and intentionally conspired with others to knowingly engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, health care fraud, wire fraud, mail fraud, and paying and receiving health care kickbacks.

### Compounded Medications

3.       Section 505 of the Food, Drug, and Cosmetic Act ("Food and Drug Act") required drug manufacturers and producers to receive approval by the United States Food and Drug Administration ("FDA") before introducing new drugs into interstate commerce.

4.       Section 503A of the Food and Drug Act exempted compounded medications from receiving FDA approval if the compounded medication was compounded by a licensed pharmacist, or other licensed professional, for an identified individual, based on the receipt of a valid prescription that was medically necessary for the identified individual.

### Health Care Benefit Programs and Claims Adjudication

5.       The United States Department of Defense, through the Defense Health Agency, administered the TRICARE program ("TRICARE"), which was a comprehensive health care insurance program that provided health care benefits to United States military personnel, retirees, and their families.

6.       In addition, various private insurance companies, including Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company ("Blue Cross"), provided health care benefits for individuals enrolled with their plans.

7.     TRICARE and these private insurance companies were each a "health care benefit program" within the meaning of Title 18, United States Code, Section 24(b).

8.     Individuals who qualified for TRICARE benefits, and the benefits of other federal health care benefit programs, were referred to as "beneficiaries."

9.     Individuals who qualified for benefits from these private insurance companies, including Blue Cross, were referred to as "members."

10.    Medical service providers, including hospitals, clinics, physicians, nurse practitioners, and pharmacies ("providers"), meeting certain criteria, could enroll with health care benefit programs, including TRICARE and Blue Cross, and provide medical services to beneficiaries and members. Providers would then submit claims, either electronically or in hard copy, to health care benefit programs seeking reimbursement for the cost of items and services provided.

11.    TRICARE, Blue Cross, and the other health care benefit programs provided prescription drug coverage, including prescriptions for compounded medications, to eligible beneficiaries and members through their pharmacy programs or similar drug plans.

12.    TRICARE's pharmacy program and other health care benefit programs' drug plans were administered by Pharmacy Benefit Managers (each a "PBM"), whose responsibilities included adjudicating and processing payment for prescription drug claims submitted by eligible pharmacies. PBMs also audited participating pharmacies to ensure compliance with their rules and regulations.

13.    Specifically, TRICARE, through the United States Department of Defense, contracted with Express Scripts to be its PBM.

14.    CVS Caremark was another PBM that provided pharmacy management services to various health care benefit programs, including Blue Cross.

15.     For prescription drugs, including compounded medications, to be reimbursed, health care benefit programs required that prescription drugs, including compounded medications, be dispensed pursuant to valid prescriptions and be medically necessary for the treatment of covered illnesses or conditions.   In other words, health care benefit programs would not reimburse prescription drugs, including compounded medications, which were not medically necessary or which were dispensed without valid prescriptions.

16.     Copayments, which were set by the health care benefit programs, were the monetary amounts or percentages paid by beneficiaries and members for health care services and items received. In other words, copayments were the beneficiaries' and members' share of the costs for the services and items received.

17.     Most, if not all, PBMs, including Express Scripts and CVS Caremark, required participating pharmacies to collect, and/or make good faith efforts to collect, copayments from beneficiaries and members at the time of billing, and specified that copayments could not be systematically waived or reduced.

18.     Consistent copayment collection was a fraud prevention measure, as copayments gave beneficiaries and members financial incentives to reject medications that were not medically necessary or that had little to no value to beneficiaries' and members' treatments.

19.     Beginning in or around January 2012, health care benefit programs permitted compounding pharmacies to submit claims and be reimbursed for each individual ingredient included in compounded medications.  In other words, the more ingredients pharmacies included in the compounded medications, the higher the reimbursements pharmacies received from the health care benefit programs or PBMs.

4

**Relevant Pharmacies**

20.     Pharmacy 1, incorporated in 2012 and located in Hinds and Madison Counties, Mississippi, was a pharmacy that specialized in the production of compounded medications. **WALTERS**, through a company co-owned by **WALTERS**, procured prescriptions for compounded medications, which were sent to Pharmacy 1.   Pharmacy 1 contracted TRICARE, through Express Scripts, to provide health care services and items to beneficiaries.

21.     Advantage Pharmacy, LLC, d/b/a Advantage Medical and Pharmacy ("Advantage Pharmacy"), formed in 2008 and located in Lamar County, Mississippi, was initially an open-door, retail pharmacy that, in or around late 2012, shifted its business focus to the production of compounded medications.     **WALTERS**, through companies owned and controlled by **WALTERS**, co-owned Advantage Pharmacy and, through other companies owned and controlled by **WALTERS**, procured prescriptions for compounded medications for Advantage Pharmacy. Advantage Pharmacy contracted with TRICARE, through Express Scripts, to provide health care services and items to beneficiaries.

22.     Sunflower Discount Pharmacy, LLC ("Sunflower Pharmacy"), formed in 2012 and physically located in Sunflower County, Mississippi, was an open-door, retail pharmacy. **WALTERS** assumed control of Sunflower Pharmacy in approximately 2014, and converted its primary business to the production of compounded medications. **WALTERS**, through other companies owned and controlled by **WALTERS**, procured prescriptions for compounded medications for Sunflower Pharmacy.  Sunflower Pharmacy contracted with TRICARE, through Express Scripts, to provide health care services and items to beneficiaries.

23.     Medworx Compounding, LLC ("Medworx Pharmacy"), formed in 2012 and located in Madison County, Mississippi, was an open-door, retail pharmacy that specialized in the production

of compounded medications. **WALTERS**, through companies owned by co-conspirators, controlled Medworx Pharmacy and, through other companies owned and controlled by **WALTERS**, procured prescriptions for compounded medications for Medworx Pharmacy. Medworx Pharmacy contracted with TRICARE, through Express Scripts, to provide health care services and items to beneficiaries.

24.     Advantage Medical Infusion, LLC, d/b/a AMI Rx ("AMI Pharmacy"), formed in 2008 and located in Lamar County, Mississippi was an open-door, retail pharmacy that, in or around 2014, shifted its business focus to the production of compounded medications. **WALTERS**, through companies owned and controlled by **WALTERS**, controlled AMI Pharmacy and, through other companies owned and controlled by **WALTERS**, procured prescriptions for compounded medications for AMI Pharmacy. AMI Pharmacy contracted with TRICARE, through Express Scripts, to provide health care services and items to beneficiaries.

25.     CFK, Inc., d/b/a Prescription Plus Pharmacy or The Medicine Shoppe ("CFK Pharmacy"), formed in 1988 and located in Davis County, Utah, was an open-door, retail pharmacy. In or around November 2014, **WALTERS** purchased CFK Pharmacy and shifted its business focus to the production of compounded medications. **WALTERS**, through a co-conspirator's ownership, controlled CFK Pharmacy and, through other companies owned and controlled by **WALTERS**, procured prescriptions for compounded medications for CFK Pharmacy. CFK Pharmacy contracted with TRICARE, through Express Scripts, to provide health care services and items to beneficiaries.

### Relevant Entities

26.     Prime Care Marketing, LLC ("Prime Care Marketing"), formed in 2012 and located in Lamar County, Mississippi, solicited and recruited practitioners to write prescriptions for

compounded medications to be dispensed by Pharmacy 1, Advantage Pharmacy, Sunflower Pharmacy, and Medworx Pharmacy. **WALTERS** co-owned Prime Care Marketing.

27.    Total Care Marketing, LLC ("Total Care Marketing"), formed in 2012 and located in Lamar County, Mississippi, solicited and recruited practitioners to write prescriptions for compounded medications to be dispensed by Advantage Pharmacy, Sunflower Pharmacy, Medworx Pharmacy, and AMI Pharmacy. **WALTERS** co-owned Total Care Marketing.

28.    Innovative Management Solutions, LLC, formerly, Innovative Marketing Solutions, LLC ("Innovative Management Solutions" or "IMS"), formed in 2014 and located in Sunflower County, Mississippi, solicited and recruited practitioners to write prescriptions for compounded medications to be dispensed by Sunflower Pharmacy and Medworx Pharmacy. Through a co-conspirator's ownership, **WALTERS** exerted control over Innovative Management Solutions.

29.    Affordable Medication Solutions, LLC ("AMS"), formed in 2014 and located in Ouachita Parish, Louisiana, purportedly provided copayment assistance for compounded medications prescribed to beneficiaries and members. In reality, AMS did not provide copayment assistance, but simply made it appear to health care benefit programs that beneficiaries' and members' copayments, or portions thereof, were covered by AMS, purportedly through manufacturers' and wholesalers' coupons.

30.    DWWW, LLC ("DWWW"), formed in 2013 and located in Lamar County, Mississippi, was co-owned and controlled by **WALTERS**, and was used to receive proceeds from Advantage Pharmacy.

31.    S&W Ventures, LLC ("S&W Ventures"), formed in 2014, was headquartered in Lubbock County, Texas, and principally operated from Lamar County, Mississippi. S&W Ventures, although owned by co-conspirators, was controlled by **WALTERS**, and was used to

7

receive proceeds from Medworx Pharmacy and CFK Pharmacy.

32.     Medworx Sunflower, LLC ("Medworx Sunflower"), formed in 2014, with its registered agent in Carson City, Nevada, was co-owned and controlled by **WALTERS**, and was used to receive proceeds from Sunflower Pharmacy, Medworx Pharmacy, and CFK Pharmacy.

33.     Dippers, LLC ("Dippers"), formed in 2014 and located in Walton County, Florida, was owned by co-conspirators and controlled by **WALTERS**, and was used to receive proceeds from Innovative Management Solutions.

34.     Walters Holdings, LLC ("Walters Holdings"), formed in 2013 and located in Lamar County, Mississippi, was owned and controlled by **WALTERS**, and was primarily used as a real estate holding company and further used to receive proceeds from, among other entities, Medworx Sunflower.

35.     Wade Walters Consulting, Inc. ("Walters Consulting"), formed in 2003 and located in Lamar County, Mississippi, was owned and controlled by **WALTERS**, and was used to receive proceeds from, among other entities, Medworx Pharmacy, Prime Care Marketing, Total Care Marketing, DWWW, S&W Ventures, Medworx Sunflower, BNSMTW, and Walters Holdings.

36.     Intellectual Property Management Services, LLC ("IPMS"), formed in 2013 and located in St. Joseph County, Indiana, was used to receive proceeds from, among others, Walters Consulting and S&W Ventures.

37.     IPMSI Holdings, LLC ("IPMSI Holdings"), formed in 2013 and located in Carson City, Nevada, was used by **WALTERS** as a holding company for IPMSI Holdings Series Limited Liability Companies.

38.     IPMSI Holdings, Series C, LLC ("IPMSI Series C"), formed in 2016 and located in Lamar County, Mississippi, was used by **WALTERS** to receive proceeds from IPMS.

39.     WW QP Holdings, LLC ("WWQP"), formed in 2015 and located in Maricopa County, Arizona, was used by **WALTERS** to receive proceeds from IPMSI Series C.

40.     DW QP Holdings, LLC ("DWQP"), formed in 2015 and located in Maricopa County, Arizona, was used by **WALTERS** to receive proceeds from IPMSI Series C.

41.     TW QP, LLC ("TWQP"), formed in 2015 and located in Maricopa County, Arizona, was used by **WALTERS** to receive proceeds from IPMSI Series C.

42.     HH QP, LLC ("HHQP"), formed in 2015 and located in Maricopa County, Arizona, was used by **WALTERS** to receive proceeds from IPMSI Series C.

43.     AF QP, LLC ("AFQP"), formed in 2015 and located in Maricopa County, Arizona, was used by **WALTERS** to receive proceeds from IPMSI Series C.

44.     National Financial Services, LLC ("NFS"), formed in New Castle County, Delaware, was an investment management company.   Between at least January 2014 and January 21, 2016, IPMSI Series C held accounts at NFS, including but not limited to account Nos. 5270, 1519, 1520, 1522, 1523, 1524, and 1525.   Between at least June 2015 and January 21, 2016, WWQP held accounts at NFS, including but not limited to account No. 4625.   Between at least June 2015 and January 21, 2016, DWQP held accounts at NFS, including but not limited to account Nos. 4616, 4617, 4620, 4622, 4626, and 4627.   Between at least August 2015 and January 21, 2016, TWQP held accounts at NFS, including but not limited to account Nos. 4903, 4907, 4910, 4912, and 4913. Between at least August 2015 and January 21, 2016, HHQP held accounts at NFS, including but not limited to account Nos. 4882, 4883, 4884, 4885, and 4886.   Between at least August 2015 and January 21, 2016, AFQP held accounts at NFS, including but not limited to account Nos. 4902, 4906, 4908, 4909, and 4911.

### Relevant Financial Institutions

45.     The Citizens National Bank of Meridian ("Citizens Bank") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation.  Citizens Bank was headquartered in Mississippi, and maintained branch locations throughout the Southern District of Mississippi.  Between at least May 2008 and January 21, 2016, Advantage Pharmacy held accounts at Citizens Bank, including but not limited to account No. 3786.

46.     Wells Fargo Bank, N.A. ("Wells Fargo") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation.  Wells Fargo was headquartered in South Dakota and maintained branch locations throughout the Southern District of Mississippi, including in Lamar County.  Between at least January 2015 and January 21, 2016, Medworx Pharmacy held accounts at Wells Fargo, including but not limited to account No. 9266.  Between at least October 2009 and January 21, 2016, CFK Pharmacy held accounts at Wells Fargo, including but not limited to account No. 1597.  Between at least August 2014 and January 21, 2016, S&W Ventures held accounts at Wells Fargo, including but not limited to account No. 4991.  Between at least October 2014 and January 21, 2016, Dippers held accounts at Wells Fargo, including but not limited to account No. 9191.  Between at least September 2014 and January 21, 2016, Co-conspirator 5 held accounts at Wells Fargo, including but not limited to account No. 3864.  Between at least December 2013 and January 21, 2016, IPMS held accounts at Wells Fargo, including but not limited to account No. 6960.

47.     Planters Bank & Trust Company ("Planters Bank") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the

Federal Deposit Insurance Corporation. Planters Bank was headquartered in Mississippi and maintained branch locations in the Northern District of Mississippi. Between at least November 2012 and January 21, 2016, Sunflower Pharmacy held accounts at Planters Bank, including but not limited to account No. 0802. Between at least February 2014 and January 21, 2016, Innovative Management Solutions held accounts at Planters Bank, including but not limited to account No. 1024.

48.     The First, A National Banking Association ("The First") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. The First was headquartered in Mississippi, and maintained branch locations throughout the Southern District of Mississippi. Between at least September 2012 and January 21, 2016, Total Care Marketing held accounts at The First, including but not limited to account No. 1365. Between at least March 2015 and January 21, 2016, BNSMTW held accounts at The First, including but not limited to account No. 2082. Between at least September 2014 and January 21, 2016, IPMSI Series C held accounts at The First, including but not limited to account No. 2454.

49.     Regions Bank ("Regions Bank") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. Regions Bank was headquartered in Alabama and maintained branch locations throughout the Southern District of Mississippi, including in Lamar County. Between at least September 2001 and January 21, 2016, **WALTERS** held accounts at Regions Bank, including but not limited to account No. 8418. Between at least September 2012 and January 21, 2016, Prime Care Marketing held accounts at Regions Bank, including but not limited to account No. 9290. Between at least February 2013 and January 21, 2016, DWWW held accounts at Regions

Bank, including but not limited to account No. 9401.  Between at least August 2012 and January 21, 2016, Walters Consulting held accounts at Regions Bank, including but not limited to account Nos. 0052 and 9629.  Between at least October 2014 and January 21, 2016, Medworx Sunflower held accounts at Regions Bank, including but not limited to account No. 3218.  Between at least November 2014 and January 21, 2016, Sunflower Pharmacy held accounts at Regions Bank, including but not limited to account No. 3528.  Between at least December 2015 and January 21, 2016, Walters Holdings held accounts at Regions Bank, including but not limited to account No. 4385.  Between at least August 2015 and January 21, 2016, TWQP held accounts at Regions Bank, including but not limited to account No. 4822.  Between at least August 2015 and January 21, 2016, HHQP held accounts at Regions Bank, including but not limited to account No. 4806.  Between at least August 2015 and January 21, 2016, AFQP held accounts at Regions Bank, including but not limited to account No. 4814.

50.  Magnolia State Bank ("Magnolia") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation.  Magnolia was headquartered in Mississippi and maintained branch locations throughout the Southern District of Mississippi.  Between at least February 2014 and January 21, 2016, Walters Holdings held accounts at Magnolia, including but not limited to account No. 1072.

51.  PriorityOne Bank ("PriorityOne") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation.  PriorityOne was headquartered in Mississippi, and maintained branch locations throughout the Southern District of Mississippi.  Between at least February 2014 and January 21, 2016, AMI Pharmacy held accounts at PriorityOne, including but not limited to

account No. 2814.  Between at least May 2015 and January 21, 2016, BNSMTW held accounts at PriorityOne, including but not limited to account No. 6658.

52.     1st Source Bank ("First Source Bank") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation.  First Source Bank was headquartered in Indiana and maintained branch locations in Indiana, Michigan, and Florida.  Between at least November 2013 and January 21, 2016, IPMS held accounts at First Source Bank, including but not limited to account No. 6883.

## COUNT 1

### The Conspiracy and Its Object

53.     Paragraphs 1 through 52 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

54.     Beginning in or around August 2012, and continuing through in or around January 2016, in Lamar County, in the Southern District of Mississippi, and elsewhere, the defendant,

### WADE ASHLEY WALTERS

did conspire and agree with others known and unknown to the United States Attorney to commit certain offenses against the United States, that is, to knowingly and willfully execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, TRICARE and other health care benefit programs, and to obtain, by means of material false and fraudulent pretenses, representations, and promises, money owned by and under the custody and control of TRICARE and other health care benefit programs, in connection with the delivery of and payment for health care benefits and services, in violation of Title 18, United States Code, Section 1347.

13

### Purpose of the Conspiracy

55.    It was a purpose of the conspiracy for **WALTERS** and his co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (b) submitting and causing the submission of claims to health care benefit programs based upon materially false and fraudulent pretenses, representations and promises; and (c) concealing the submission of false and fraudulent claims to health care benefit programs.

### Manner and Means

56.    The manner and means by which **WALTERS** and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

57.    Between September 2012 and January 2016, **WALTERS** formed and/or acquired ownership interest in Prime Care Marketing, Total Care Marketing, and IMS for the purpose of contracting with compounding pharmacies, including Pharmacy 1, as well as Advantage Pharmacy, AMI Pharmacy, Medworx Pharmacy, Sunflower Pharmacy, and CFK Pharmacy (collectively, the "Pharmacies"), to solicit and refer prescriptions for compounded medications in exchange for a percentage of the reimbursements paid by PBMs and health care benefit programs.

58.    Through Prime Care Marketing, Total Care Marketing, and IMS, **WALTERS** and his co-conspirators worked with Pharmacy 1 and the Pharmacies to develop formulas for high-margin compounded medications. To that end, Prime Care Marketing, Total Care Marketing, and IMS created pre-printed prescription pads containing high-reimbursing formulas so as to facilitate practitioners prescribing high-margin compounded medications rather than compounded medications tailored to meet the patients' specific needs.

59.    Despite the fact that these high-margin compounded medications were formulated based on profit rather than any scientific evidence that the particular combinations were effective,

14

**WALTERS** and his co-conspirators, through Prime Care Marketing, Total Care Marketing, and IMS, solicited practitioners to prescribe these compounded medications and refer the same to Pharmacy 1 and the Pharmacies, representing without FDA approval that these compounded medications were safe and effective for scar reduction, pain, and weight loss, among other conditions, and induced the practitioners to prescribe the high-margin formulations through the payment of kickbacks or bribes in cash and in kind.

60.    On occasion, and at **WALTERS'** direction, practitioners prescribed high-margin compounded medications to beneficiaries and members, including family members of **WALTERS**, who were never examined and where there was no medical necessity for the high-margin compounded medications.

61.    Consequently, Pharmacy 1 and the Pharmacies paid remuneration to **WALTERS** and his co-conspirators, through Prime Care Marketing, Total Care Marketing, and IMS, including remuneration on claims reimbursed by TRICARE, which **WALTERS** in turn paid to marketers, prescribers, and others, despite knowing that such remuneration was unlawful.

62.    Between February 2013 and January 2016, **WALTERS** acquired ownership interests in the Pharmacies.

63.    Through his ownership interests in the Pharmacies, **WALTERS** contracted with and paid remuneration to Prime Care Marketing, Total Care Marketing, IMS and other marketers for the referral of prescriptions for high-margin compounded medications, including remuneration on claims reimbursed by TRICARE.

64.    Through the Pharmacies, **WALTERS** and his co-conspirators continued to formulate and manufacture high-margin compounded medications, irrespective of any particularized medical need and or valid studies supporting medical efficacy.

65.     Through his ownership interests in the Pharmacies, contrary to the Pharmacies' contractual relationships with PBMs and health care benefit programs, **WALTERS** and his co-conspirators routinely and systematically waived and/or reduced copayments to be paid by beneficiaries and members.

66.     To that end, **WALTERS** and his co-conspirators, through the Pharmacies, contracted with AMS, which purportedly provided copayment assistance, but, in reality, only made it appear as if AMS subsidized beneficiaries' and members' copayment amounts. **WALTERS** and his co-conspirators utilized AMS and other means to disguise that the Pharmacies were paying beneficiary and member copayment amounts.

67.     **WALTERS** and his co-conspirators caused Pharmacy 1 and the Pharmacies to submit false and fraudulent claims to TRICARE, and other health care benefit programs, through interstate wire transmissions, ultimately receiving more than approximately $287,659,569.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2

### The Conspiracy and Its Objects

68.     Paragraphs 1 through 52 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

69.     From in or around December 2013, and continuing through in or around January 2016, within the Southern District of Mississippi and elsewhere, the defendant,

### WADE ASHLEY WALTERS

did knowingly and intentionally conspire and agree with others to commit offenses against the United States, specifically to knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally

derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud, in violation of Title 18, United States Code, Section 1347, wire fraud, in violation of Title 18, United States Code, Section 1343, and paying and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b), in violation of Title 18, United States Code, Section 1957.

### Purpose of the Conspiracy

70.    It was a purpose of the conspiracy to conduct wire transfers and issue and deposit checks in criminally derived property in amounts greater than $10,000.

### Manner and Means

71.    **WALTERS** and his co-conspirators engaged in monetary transactions using checks and wire transfers to direct the proceeds earned from Advantage Pharmacy, AMI Pharmacy, Medworx Pharmacy, Sunflower Pharmacy, and CFK Pharmacy, and derived from health care fraud, wire fraud, mail fraud, and paying and receiving health care kickbacks, into bank accounts in the name of IPMS in amounts greater than $10,000.  For example, on December 24, 2015, **WALTERS** caused a wire transfer from Regions Bank account No. 9401 in the name of DWWW, LLC to First Source Bank account No. 6883 in the amount of $3,048,432.46 of proceeds derived from specified unlawful activity.

72.    **WALTERS** and his co-conspirators engaged in monetary transactions using checks and wire transfers in amounts greater than $10,000 to direct the proceeds earned from Advantage Pharmacy, AMI Pharmacy, Medworx Pharmacy, Sunflower Pharmacy, and CFK Pharmacy, and derived from health care fraud, wire fraud, mail fraud, and paying and receiving health care kickbacks, between and among various bank accounts.  For example, on July 23, 2015, **WALTERS** caused a wire transfer from Magnolia State Bank account No. 1072 in the name of

17

Walters Holdings to Regions Bank account No. 9629 in the name of Walters Consulting in the amount of $8,550,000 of proceeds derived from specified unlawful activity.

73.    **WALTERS** and his co-conspirators engaged in monetary transactions using checks and wire transfers in amounts greater than $10,000 to use the proceeds earned from Advantage Pharmacy, AMI Pharmacy, Medworx Pharmacy, Sunflower Pharmacy, and CFK Pharmacy, and derived from health care fraud, wire fraud, mail fraud, and paying and receiving health care kickbacks, to purchase personal property and real property. For example, on June 9, 2014, **WALTERS** caused a wire transfer from Magnolia State Bank account No. 1072 in the name of Walters Holdings to a title company to purchase a real property in Tampa, Florida in the amount of $516,137.70 of proceeds derived from specified unlawful activity.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

74.     Upon conviction of the offense alleged in Count One of this Information, **WALTERS** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).  Upon conviction of the offense alleged in Count Two of this Information, **WALTERS** shall forfeit to the United States any property, real or personal, involved in this offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).  The property subject to forfeiture includes:

| Criminal Forfeiture Identifier | Identifier from parallel Civil Case *United States v. Real Property Located at 19 Crane Park*, 2:18-cv-165 | Asset Description |
|---|---|---|
| A1 | A-009 | $1,192.91 seized from The First account number 15001878, an account in the name of P3 in a Pod, LLC |
| A2 | A-125 | $123,443.70 seized from WFB account number 5750593864, an account in the name of Co-conspirator 5. |
| A3 | N/A | $1.5 million traceable to the sale of 505 Blair Branch Road, Walland, Tennessee, held in escrow. |
| A4 | A-002 | $138,775.22 seized from The First account number 15002454, an account in the name IPMSI Holdings, LLC, Series C. |
| A5 | A-004 | $448,586.98 seized from Regions account number 19560052, an account in the name of Wade Walters Consulting, Inc. |
| A6 | A-005 | $330,496.54 seized from Regions account number 150249398, an account in the name of Wade Walters Consulting, Inc. |
| A7 | A-008 | $1,905,238.23 seized from Regions account number 19528418, an account in the name of Wade Ashley Walters & Co-conspirator 5. |
| A8 | A-011 | $529,197.81 seized from Regions account number 49648314, an account in the name of Performance Accounts Receivable, LLC. |

| A9 | A-012 | $227,230.38 seized from Regions account number 92435203, an account in the name of Prime Care Revenue Management, LLC. |
|---|---|---|
| A10 | A-013 | $82,300.22 seized from Regions account number 133606447, an account in the name of Prime Care Management Group. |
| A11 | A-014 | $153,179.87 seized from Regions account number 51174243, an account in the name of Performance Capital Leasing, LLC. |
| A12 | A-025 | $4,794,772.12 seized from Regions account number 150249401, an account in the name of DWWW, LLC. |
| A13 | A-033 | $490,088.62 seized from NY Life IA, account number N-29-035270, an account in the name of IPMSI Holdings LLC, Series C. |
| A14 | A-037 | $4.27 seized from NY Life IA L36-001519-1, an account in the name of IPMSI Holdings, LLC, Series C. |
| A15 | A-038 | $1.64 seized from NY Life IA L36-001505, an account in the name of DWWW, LLC. |
| A16 | A-041 | $3.74 seized from NY Life IA L36-004902, an account in the name of AF QP, LLC. |
| A17 | A-042 | $3.74 seized from NY Life IA L36-004886, an account in the name of HH QP, LLC. |
| A18 | A-043 | $2.65 seized from NY Life IA L36-004903, an account in the name of TW QP, LLC. |
| A19 | A-052 | $1,032,087.95 seized from Regions account number 150249266, an account in the name of Performance Aviation, LLC. |
| A20 | A-055 | $351,813.23 seized from Magnolia account number 8601072, an account in the name of Walters Holdings, LLC. |
| A21 | A-069 | $86,947.21 seized from NY Life IA L36-001520, an account in the name of IPMSI Holdings, LLC, Series C. |
| A22 | A-070 | $252,494.53 seized from NY Life IA L36-001522, an account in the name of IPMSI Holdings, LLC, Series C. |
| A23 | A-071 | $253,583.04 seized from NY Life IA L36-001523, an account in the name of IPMSI Holdings, LLC, Series C. |
| A24 | A-072 | $101,163.26 seized from NY Life IA L36-001524, an account in the name of IPMSI Holdings, LLC, Series C. |
| A25 | A-073 | $121,303.16 seized from NY Life IA L36-001525, an account in the name of IPMSI Holdings, LLC, Series C. |
| A26 | A-074 | $452,428.97 seized from NY Life IA L36-001507, an account in the name of DWWW, LLC. |
| A27 | A-075 | $462,486.98 seized from NY Life IA L36-001508, an account in the name of DWWW, LLC. |
| A28 | A-076 | $364,053.84 seized from NY Life IA L36-001509, an account in the name of DWWW, LLC. |

| A29 | A-077 | $230,845.15 seized from NY Life IA L36-001510, an account in the name of DWWW, LLC. |
| A30 | A-078 | $310,871.22 seized from NY Life IA L36-001511, an account in the name of DWWW, LLC. |
| A31 | A-087 | $5,404,498.13 seized from NY Life IA L36-004625, an account in the name of WW QP Holdings, LLC. |
| A32 | A-088 | $98,508.21 seized from NY Life IA L36-004909, an account in the name of AF QP, LLC. |
| A33 | A-089 | $260,787.87 seized from NY Life IA L36-004911, an account in the name of AF QP, LLC. |
| A34 | A-090 | $264,477.75 seized from NY Life IA L36-004908, an account in the name of AF QP, LLC. |
| A35 | A-091 | $335,549.69 seized from NY Life IA L36-004906, an account in the name of AF QP, LLC. |
| A36 | A-099 | $98,528.45 seized from NY Life IA L36-004884, an account in the name of HH QP, LLC. |
| A37 | A-100 | $260,783.37 seized from NY Life IA L36-004885, an account in the name of HH QP, LLC. |
| A38 | A-101 | $264,445.11 seized from NY Life IA L36-004883, an account in the name of HH QP, LLC. |
| A39 | A-102 | $335,341.33 seized from NY Life IA L36-004882, an account in the name of HH QP, LLC. |
| A40 | A-103 | $97,330.21 seized from NY Life IA L36-004912, an account in the name of TW QP, LLC. |
| A41 | A-104 | $124,422.79 seized from NY Life IA L36-004910, an account in the name of TW QP, LLC. |
| A42 | A-105 | $160,851.73 seized from NY Life IA L36-004913, an account in the name of TW QP, LLC. |
| A43 | A-106 | $250,094.30 seized from NY Life IA L36-004907, an account in the name of TW QP, LLC. |
| A44 | A-114 | $980,011.25 seized from NY Life IA L36-004616, an account in the name of DW QP Holdings, LLC. |
| A45 | A-127 | $318,629.67 seized from NY Life IA L36-004617, an account in the name of DW QP Holdings, LLC. |
| A46 | A-128 | $2,019,937.34 seized from NY Life IA L36-004620, an account in the name of DW QP Holdings, LLC. |
| A47 | A-129 | $1,002,839.27 seized from NY Life IA L36-004622, an account in the name of DW QP Holdings, LLC. |
| A48 | A-130 | $318,511.03 seized from NY Life IA L36-004626, an account in the name of DW QP Holdings, LLC. |
| A49 | A-131 | $742,348.48 seized from NY Life IA L36-004627, an account in the name of DW QP Holdings, LLC. |
| A50 | A-149 | $1,233,232.13 seized from Regions account number 185909629, an account held in the name of Wade Walters Consulting, Inc. |

| B1 | B-001 | 2015 Super Air Nautique G23-23.00' Boat with Hull ID CTC54385C515 and Vessel #FIO630PX and a 2015 Tilt Tandem Trailer with VIN 5A7BB2321FT000422, with all attachments thereon, registered to Wade Ashley Walters. |
|----|-------|----|
| B2 | B-002 | 2013 Mercedes Benz G550, VIN WDCYC3HF9DX212259, Tag MS LMF592, with all attachments thereon, registered to Wade Walters Consulting, Inc. |
| B3 | B-003 | 2015 Ford F-150, VIN 1FTEW1EF3FFA26041, Tag MS LM5522, with all attachments thereon, registered to Walters Consulting, Inc. |
| B4 | B-005 | 2015 Mercedes Benz SL 400, VIN WDDJK6FA0FF035487, with all attachments thereon, registered to Wade Walters Consulting, Inc. |
| B5 | B-006 | 2015 Mercedes Benz GL 550, VIN 4JGDF7DE0FA567032, Tag MS LML552, with all attachments thereon, registered to Wade Walters Consulting, Inc. |
| B6 | B-016 | Cirrus Design Corporation Aircraft Model SR22T, fixed-wing, single-engine aircraft, with tail number N729DW and serial number 0714, registered to Performance Aviation, LLC. |
| C1 | C-002 | 104 Bocage Ct., Hattiesburg, Lamar County, MS, titled to Wade Ashley Walters and Co-conspirator 5. |
| | | Legally described as:<br><br>Real property located at 104 Bocage Court, Hattiesburg, Lamar County, Mississippi, more particularly described as:<br><br>Parcel No. 101Q-12-052.000<br><br>Lot 4, Canebrake Golf Community, Brake GD, in the County of Lamar, State of Mississippi, as per the map or plat thereof on file and of record in the office of the Chancery Clerk of Lamar County, Mississippi, at Plat Book 2, Page 141, Slide A-206; together with all improvements thereon and appurtenances thereunto belonging.<br><br>ALSO, Being described as Lot GD-4, Canebrake Golf Community, in the County of Lamar, State of Mississippi, as per the map or plat thereof on file and of record in the office of the Chancery Clerk of Lamar County, Mississippi, at Plat Book 2, Page 141, Slide A-206; together with all improvements thereon and appurtenances thereunto belonging. |

| C2 | C-003 | Parcel 088-18007, Tallahatchie County, MS, titled to Wade Ashley Walters. |
| | | Legally described as:<br><br>Real property located in Tallahatchie County, Mississippi, more particularly described as:<br><br>Parcel No. 088-18007<br><br>S ½ of SW ¼ of Section 18 – T24-R2E, containing 80 acres more or less being located in the First Judicial District of Tallahatchie County, Mississippi. |
| C3 | C-004 | Parcel 088-19006, Tallahatchie County, MS, titled to Wade Ashley Walters. |
| | | Legally described as:<br><br>Real property located in Tallahatchie County, Mississippi, more particularly described as:<br><br>Parcel No. 088-19006<br><br>77 acres in the South Half of the Northwest Quarter (less part off the end) of Section 19, Township 24 North, Range 2 East. |
| C4 | C-005 | Parcel 088-19007, Tallahatchie County, MS, titled to Wade Ashley Walters. |
| | | Legally described as:<br><br>Real property located in Tallahatchie County, Mississippi, more particularly described as:<br><br>Parcel No. 088-19007<br><br>N ½ of NW ¼ and N 10 acres of S ½ of NW ¼, all located in Section 19, Township 24, Range 2 East.<br>97 acres |
| C5 | C-006 | Parcel 088-19002, Tallahatchie County, MS, titled to Wade Walters Consulting Inc. |
| | | Legally described as:<br><br>Real property located in Tallahatchie County, Mississippi, more particularly described as:<br><br>Parcel No. 088-19002 |

| | | |
|---|---|---|
| | | The Southwest Quarter of the Northeast Quarter and the Northwest Quarter of the Southeast Quarter of section 19, Township 24 North, Range 2 East, First Judicial District, Tallahatchie County, Mississippi.  Being 86 acres, more or less. |
| C6 | C-012 | 80 Sandy Creek Dr., Santa Rosa Beach, Walton County, Florida, titled to Wade Ashley Walters & Co-conspirator 5. |
| | | Legally described as:<br><br>Real property located at 80 Sandy Creek Drive, Santa Rosa Beach, Walton County, Florida, more particularly described as:<br><br>Parcel No. 15-3S-19-25419-000-0170<br><br>Lot 17, Sandy Creek at WaterColor, according to the map or plat thereof, as recorded in Plat Book 15, Page(s) 57 through 57B, inclusive, of the Public Records of Walton County, Florida. |
| C7 | C-019 | Parcel 101Q-12-053.001 (Bocage Ct.) Hattiesburg, Lamar County, MS, titled to Wade Ashley Walters, and Co-conspirator 5. |
| | | Legally described as:<br><br>Real property located at Bocage Court, Hattiesburg, Lamar County, Mississippi (Corner of Lot 13 Canebrake Golf Community), more particularly described as:<br><br>Parcel No. 101Q-12-053.001<br><br>A parcel of land being part of Lot 13 of Canebrake Golf Community, Brake GE, Lamar County, Mississippi, said parcel more particularly described as follows:<br><br>Begin at the Southeast corner of Lot 12 of said Canebrake Golf Community, Brake GE Subdivision; thence run South 87 degrees 33 minutes 12 seconds West for 59.35 feet to the East lot line of said Lot 13; thence North 04 degrees 47 minutes 49 seconds West along said East line for 22.99 feet to the Northeast corner of said Lot 13; thence run South 70 degrees 26 minutes 41 seconds West along the North lot line of said Lot 13 for 60.89 feet back to the Point of Beginning.  Said parcel contains 0.02 acres more or less; together with all improvements thereon and appurtenances thereunto belonging. |

| C8 | C-023 | $496,810.82, held in escrow, in lieu of Parcels 054-26002, 054-26003, 054-26004, Tallahatchie County, MS, titled to DWWW, LLC and BPCK Nichols, LLC. |
|----|-------|---|
| | | Legally described as: Real property located in Tallahatchie County, Mississippi, more particularly described as: Parcel Nos. 054-26002, 054-26003, 054-26004 TRACT ONE Sectional lots 8, 9, 10, 11 and 12 (being the South Half situated South and West of O'Possum Bayou) of Section 26, Township 25 North, Range 1 West, Second Judicial District of Tallahatchie County, MS BUT, SUBJECT TO a right of way, 10 feet wide, adjacent to the South right of way of a County Road, by Lula Mae Hicks in favor of Brazil-Sumner Water Association, Inc. per instrument filed for record April 7, 1980, and recorded in Book 221, at Page 254, in the Offices of the Chancery Clerk of said County. TRACT TWO 4.34 acres located in Northwest ¼ of the Southeast Section 26, Township 25 North, Range 1 West, Second Judicial District, Tallahatchie County, Mississippi. |
| C9 | C-048 | 532 Farmside Lane, Unit #14, Walland, Blount County, Tennessee, further described in Exhibit #1, titled to B.T., Trustee for Wade Ashley Walters and Co-conspirator 5's Irrevocable Trust. |
| | | Legally described as: Those certain premises comprising a portion of the project known as BLACKBERRY FARMSIDE, A CONDOMINIUM, situated in the Eighteenth (18th) Civil District of Blount County, Tennessee, such project having been established as a condominium by Declaration of Condominium for Blackberry Farmside, A Condominium dated as of August 5, 2013, of record in Record Book 2367, Page 215, as amended by Amendment to Declaration of Condominium of Blackberry Farmside, A Condominium dated as of March 31, 2014, of record in Record Book 2384, page 2290, as amended by Amendment to Declaration of Condominium of Blackberry Farmside, A Condominium dated as of March 19, 2015, of record in |

Record Book 2411, page 2757, as amended by that Amendment to Declaration of Condominium of Blackberry Farmside, A Condominium dated as of September 17, 2015, of record in Record Book 2427, page 1922, and as amended by that Amendment to Declaration of Condominium of Blackberry Farmside, A Condominium dated as of November 20, 2015, of record in Record Book 2433, page 2695, all in the Register of Deeds Office for Blount County, Tennessee (collectively, the "Declaration of Condominium"), pursuant to the provisions of the Tennessee Condominium Act of 2008 (Tennessee Code Annotated Sections 66-27-201, et seq.),as amended, the premises being more particularly described as follows:

1.      Unit #14, located at 532 Farmside Lane, Walland, Tennessee 37886, such Unit being shown on the condominium plat that is attached as Exhibit "C" to the aforesaid Declaration of Condominium (as plat is amended by schedules to the aforesaid Amendments to Declaration of Condominium);

2.      Together with an undivided interest in the Common Elements of the project as described in the Declaration of Condominium.

TOGETHER WITH AND SUBJECT TO THE RIGHTS OF OTHERS in the non-exclusive easements for ingress and egress described in the Declaration of Joint Permanent Easements dated May 12,2004, of record in Record Book 2017, page 1715, in the Blount County Register of Deeds Office, as amended by Amendment of Declaration of Joint Permanent Easement dated June 11, 2010, of record in Record Book 2265, Page 2858, in the Blount County Register of Deeds Office; and with the corresponding right of use of Joe Pye Lane as shown on the plats of record in Map File 303IB and Map File 2790B in tl1e Blount County Register of Deeds Office. Also see Amendment to Declaration of Covenants and Restrictions for Singing Brook at Blackberry Farm dated July I, 2013, of record in Record Book 3267, page 191 in the Blount County Register of Deeds Office, relating to said non-exclusive access rights.

ALSO TOGETHER WITH AND SUBJECT TO THE RIGHTS OF OTHERS in the nonexclusive easements for ingress and egress, for utilities and for other matters

| | | |
|---|---|---|
| | | described in that Easement Declaration dated November 20, 2015, of record in  Record Book 2433, Page 2748, in the Blount County Register of Deeds Office.<br><br>BEING part of the same property conveyed Blackberry Development Company by Warranty Deed dated November 20, 2015, of record in Record Book 2433 ,Page 2691, in the Register of Deeds Office for Blount County, Tennessee, Being the same property conveyed to Brad Trussell, Trustee for The Wade And Dorothy Walters Irrevocable Trust dated October 12, 2015 from Blackberry Development Company by Unit Deed dated November 23, 2015, of record in Record Book 2433, page 2762, in the Blount Register of Deeds Office. |
| C10 | C-049 | Parcel 082-063.06 (17.65 Acres) on Wolf Creek Road, Walland, Blount County, Tennessee, titled to B.T., Trustee for Wade Ashley Walters and Co-conspirator 5's Irrevocable Trust. |
| | | Legally described as:<br><br>SITUATED In District No. Eighteen (18) of Blount County, Tennessee, and being more particularly described as follows:<br><br>TRACT I:<br><br>BEGINNING at an iron pin found in the edge of Hearon Road, being 1200 ft., more or less, to Millers Cove Road; thence with the line of N. Hearon N. 24-25 W. 365.37 ft., to an Iron rod set at a fence line; thence N. 89-02 E. 73.32 ft. to a point; thence s. 24-26 E. 394.05 ft. to a point in the edge of Hearon Road; thence with the edge of Hearon Road N. 20-34 E. 28.28 ft. to the point of BEGINNING, and being a strip of land to be used for a right of way for Ingress and egress to Tract II described herein and containing 0.17 acres, more or less.<br><br>TRACT II:<br><br>BEGINNING at an Iron rod set at a fence line, said Iron rod being located N. 24-26 W.<br>365.37 ft. from an Iron pin found in the edge of Hearon Road; thence from said Iron rod set a fence line with the line of N. Hearon N. 24-17 W. 1,078.20 ft. to a found stone on ridge, comer to Braun; thence with the line of A. Braun S. 54-38 W. 740.84 ft. to an Iron rod; thence with the line |

| | | |
|---|---|---|
| | | of A. Braun S. 05-36 E. 372.90 ft. to a found stone on the west bank of the stream; thence continuing with the line of A. Braun s.05-26 E. 471.07 ft. to an Iron rod set at a 34 inch poplar at an old fence line, corner to the remaining lands of M. E. Keener North 66-09 East 663.06 ft. to an Iron rod; thence continuing with the remaining lands of M. E. Keener North 74-33 East 166.25ft. to an Iron rod; thence continuing with the lands of M. E. Keener South 77-51 East 130.38 ft. to an iron rod; thence continuing with the remaining lands of M. E. Keener North 89-02 East 73.32 ft. to the iron rod at the point of BEGINNING at a fence line, and containing 17.48 acres, more or less, as per survey of Richard H. Everett, dated September 24, 1981, Registered Land surveyor, Tennessee No. 862.<br><br>BEING the same property conveyed to Robert Gordon Thompson, II by Quit Claim Deed from Nancy Carolyn McLemore Thompson, dated 04/03/1993, recorded 04/05/1993, in Book 548, Page 330, In the Registers Office for Blount County, Tennessee.<br><br>Commonly known as: Wolf Creek Road, Walland, TN 37886<br><br>Designated as Tax ID: 082-063.06 |
| C11 | C-050 | 19 Crane Park, Hattiesburg, Lamar County, MS, titled to Wade Ashley Walters and Co-conspirator 5. |
| | | Legally described as:<br><br>Real property located at 19 Crane Park, Hattiesburg, Lamar County, Mississippi, more particularly described as:<br><br>Parcel No. 101G-01-055.000<br><br>Lot 20 of Canebrake, Brake "TT-1", First Revision, a Subdivision of the County of Lamar, State of Mississippi, as per the map or plat thereof on file and of record in the office of the Chancery Clerk of Lamar County, Mississippi, at Plat Book 2, Page 95, Slide A-160 together with all improvements thereon and appurtenances thereunto belonging.<br><br>Subject to prior reservations of oil, gas and other minerals by former owners. |

Taxes for the year 2004 shall be pro-rated as of the date of this instrument and assumed by the Grantee. It is specifically agreed and understood that taxes for the current year are pro-rated based upon the previous years taxes.

Subject to those certain Subdivision Regulations adopted by the Board of Supervisors of Lamar County of record in Minute Book 59 at Page 202 and amended in Minute Book 82 at Page 282 and amended in Minute Book 112 at Page 144 and amended further in Minute Book 112 at Page 290 in the office of the Chancery Clerk of Lamar County, Mississippi.

Subject to that certain Declaration of Covenants, Conditions and Restrictions for Canebrake Subdivision from Bennett V. York to The Public, dated December 17, 1985 and of record in Book 7-T at Page 380 in the office of the Chancery Clerk of Lamar County, Mississippi; said Covenants have been amended and of record in Book 9-I at Page 141 in the office of the Chancery Clerk of Lamar County, Mississippi; said Covenants have been supplemented and of record in Book 8-C at Page 108 in the office of the Chancery Clerk of Lamar County, Mississippi; said Covenants have been supplemented and recorded in Book 11-G at Page 16 in the office of the Chancery Clerk of Lamar County, Mississippi.

Subject to that certain Corrected Waiver and Release of First Right of Refusal to Bennett V. York, dated May 11, 1992 and of record in Book 10-C at Page 528 in the office of the Chancery Clerk of Lamar County, Mississippi.

Subject to that certain Shared Use Agreement from Canebrake Owners Association, Inc. to Canebrake Golf Community Association, Inc., dated October 4, 1996 and recorded in Book 12-M at Page 667 and I.D. Book 1 at Page 217 and amended in Book 12-Q at Page 365 and I.D. Book 1 at Page 233, second amendment dated December 20, 1999 recorded in Book 14-G at Page 678 and I.D. Book 1 at Page 275, and dated January 15, 1997 recorded in Book 14-G at Page 662 and I.D. Book 1 at Page 259 in the office of the Chancery Clerk of Lamar County, Mississippi.

| | | |
|---|---|---|
| | | Subject to that certain Easement from Bennett V. York to Pearl River Valley Electric Power Association, dated October 14, 1985 and filed for record in Book 7-S at Page 394 in the office of the Chancery Clerk of Lamar County, Mississippi.<br><br>Subject to that certain Easement from Bennett V. York to Pearl River Valley Electric Power Association, dated October 11, 1993 and filed for record in Book 10-V at Page 432 in the office of the Chancery Clerk of Lamar County, Mississippi.<br><br>Subject to that certain Easement from Bennett V. York to Pearl River Valley Electric Power Association, dated August 9, 1994 and filed for record in Book 11-G at Page 175 in the office of the Chancery Clerk of Lamar County, Mississippi. |
| C12 | N/A | 112 Oxford Creek Drive, Oxford, Lafayette County, MS titled to Co-conspirator 12. |
| | | Legally described as:<br><br>Real property located at 112 Oxford Creek Drive, Oxford, Lafayette County, Mississippi, more particularly described as:<br><br>Parcel No. 135F-16-043.27<br><br>TOWNSHIP 8 SOUTH, RANGE 3 WEST, SECTION 16:<br><br>Lot No. 7 of Oxford Creek Subdivision, as set out and shown on the official map and plat of said subdivision found among the land records of Lafayette County, Mississippi, in Plat Cabinet B on Slide 128, as of February 25th, 2005, at 2:25 p.m., as amended, reference of which is hereby made in aid of description hereof. |
| C13 | C-007 | Parcel 098-3401201 Tallahatchie County, MS, titled to Walters Holdings LLC. |
| | | Legally described as:<br><br>Real property located in Tallahatchie County, Mississippi, more particularly described as:<br><br>Parcel No. 098-3401201 |

Part of the SE ¼ of the SE ¼, part of the SW ¼ of the SE ¼, part of the NE ¼ of the SE ¼, and part of the NW ¼ of the SE ¼, all in Section 34, Township 24 North, Range 2 East, First Judicial District, Tallahatchie County, Mississippi, more particularly described as follows:

Beginning at a found iron pipe at the southeast corner of said Section 34; proceed thence S 89 degrees 56'53" W 1568.49 feet to a set iron pin at a fence corner on the west side of a creek or ditch; thence along said fence on the west side of said ditch as follows, N 03 degrees 00'00" E 548.98 feet, N 05 degrees 07'02" E 566.27 feet, N 05 degrees 39'18" E 669.71 feet, N 05 degrees 39'25" E 533.81 feet, N 01 degrees 33'51" E 325.05 feet to a set iron pin on the north line of the SE ¼ of said Section 34; thence East 795.28 feet to a set iron pin in the center of the old Poplar Springs Road; thence along the center of said old road to set iron pins as follows, S 16 degrees 19'16" E 150.38 feet, S 15 degrees 41'24" E 228.74 feet, S 35 degrees 23'13" E 167.55 feet, S 54 degrees 03'21" E 49.64 feet, S 34 degrees 16'20" E 97.17 feet, S 32 degrees 21'54" E 242.29 feet, S 59 degrees 20'11" E 126.71 feet, N 87 degrees 10'06" E 31.78 feet to a set iron pin on the east line of said Section 34; thence away from said old road South 1755.12 feet to the Point of Beginning, containing 81.18 acres, more or less.

EASEMENT DESCRIPTION
Part of the NW ¼ of the SE ¼ of Section 34, Township 24 North, Range 2 East, First Judicial District, Tallahatchie County, Mississippi, more particularly described as follows:

A 60 feet right of way, with 30 feet lying either side of a centerline described as beginning at a point in the center of a field road, said point being on the east right of way of Mississippi Highway 35, also being 1813.5 feet west and 2589.9 feet north of a found iron pipe at the southeast corner of said Section 34; proceed thence along said center line as follows, S 78 degrees 26'44" E 46.77 feet, N 88 degrees 59'44" E 74.11 feet, N 88 degrees 55'11" E 68.91 feet, N 85 degrees 20'08" E 63.91 feet, N 80 degrees 18'58" E 54.07 feet, N 84 degrees 57'36" E 44.37 feet, S 82 degrees 24'33" E 39.35 feet, S 57 degrees 13'31" E 71.94 feet to the end of said easement.

| C14 | C-008 | 6131 Yeats Manor Dr., Tampa, Hillsborough County, FL, titled to D.H. and Co-conspirator 11. |
|-----|-------|---------------------------------------------------------------------------------------------|
| | | Legally described as:<br><br>Real property located at 6131 Yeats Manor Drive, Tampa, Hillsborough County, Florida<br><br>Folio No. 132427-3402<br><br>Lot 1, Block 34, Westshore Yacht Club Phase 3B, according to the Plat thereof, recorded in Plat Book 113, Page(s) 107 through 111, of the Public Records of Hillsborough County, Florida<br><br>Parcel ID Number:  A0830189BS000034000010 |
| C15 | C-020 | Parcels 103-06-001.002, 103-07-006.000, 103-07-006.001, 151-01-026.000, 151-01-027.000, 151-02-010.000, 151-12-001.000, located at North Black Creek Road, Sumrall, Lamar County, MS, titled to Walters Holdings LLC. |
| | | Legally described as:<br><br>Real property located on North Black Creek Road, Lamar County, Mississippi, more particularly described as:<br><br>Parcel Nos. 103-07-006.000, 151-12-001.000, 151-01-027.000, 151-01-026.000, 151-02-010.000, 103-06-001.002, 103-07-006.001<br><br>Beginning at an iron pipe at the NW corner of the SW ¼ of Section 6, T-4-N, R-15-W, Lamar County, Mississippi and run N 89°39'04"E 2576.27 feet along the forty line to an iron pin at the center of said Section 6; thence run N00°14'32"W 274.80 feet along the half section line to an iron pipe on the Southerly right-of-way line of North Black Creek Road; thence run on and along a curve that curves to the right and has a radius of 492.43 feet, a central angle of 18°46'38" for 161.38 feet, a long chord of S23°55'37"E 160.66 feet along said right-of-way line to an iron pin; thence run S17°33'31"E 168.67 feet along said right-of-way line to an iron pin; thence run S89°55'50'W 114.38 feet to an iron pin on the half section line; thence run S00°52'40"E 2622.25 feet along the half section line to a lightered post at the SE corner of the SW ¼ of said Section 6; thence run S89°49'46"W 1301.65 feet along the section line to a concrete post at the forty corner; thence run |

S00°01'17"E 1315.86 feet along the forty line to a concrete post at the forty corner; thence run N89°53'05"E 1300.74 feet along the forty line to an iron pin at the forty corner; thence run S00°01'06"W 1317.11 feet along the half section line to a pine knot at the forty corner; thence run S00°10'01"W 1324.34 feet along the half section line to a lightered post at the forty corner; thence run S00°22'02"E 1318.42 feet along the half section line to a pine knot at the SE corner of the SW ¼ of Section 7, T-4-N, R-15-W; thence run S89°38'31"W 2613.81 feet along section line to the SW corner of Section 7, T-4-N, R-15-W; thence run N00°04'32"W 1321.05 feet along the section line to the forty corner; thence run S89°06'57"W 1311.81 feet along the forty line to the forty corner; thence run N00°08'50"W 1321.65 feet along the forty line to the forty corner; thence run S89°08'35"W 2626.92 feet along the forty line to the forty corner; thence run N00°17'26"W 1322.85 feet along the forty line to the forty corner; thence run S89°10'12"W 1315.10 feet along the forty line to the forty corner on the section line; thence run N00°21'44"W 1323.45 feet along the section line to the NW corner of Section 12, T-4-N, R-16-W; thence run S89°43'57"W 1319.81 feet along the section line to the forty corner; thence run N00°18'14"W 1334.43 feet along the forty line to an iron pipe at the forty corner; thence run S89°43'57"W 215.51 feet along the forty line to the Easterly right-of-way line of Oloh Road; thence run N34°52'13"E 2325.27 feet along said right-of-way line to an iron pin; thence run on and along a curve that curves to the left and has a radius of 2250.90 feet, a central angle of 04°51'10" for 190.64 feet, a long chord of N32°56'30"E 190.59 feet along said right-of-way line to an iron pin on the centerline of a gravel road; thence run along said centerline of gravel road the following (31) Thirty-One calls: S53°11'38"E 185.34 feet to a cotton picken spindle, S46°48'45"E 88.14 feet to a cotton picken spindle; S33°02'47"E 200.74 feet to a cotton picken spindle; S60°51'46"E 51.71 feet to a cotton picken spindle; S86°50'28"E 40.40 feet to a cotton picken spindle; M80°53'02"E 135.73 feet to a cotton picken spindle; N87°31'14"E 163.36 feet to a cotton picken spindle; S87°27'14"E 57.64 feet to an iron pin; S87°11'27"E 205.26 feet to an iron pin; N84°10'43"E 57.58 feet to an iron pin; N68°16'49"E 41.67 feet to an iron pin; N62°03'06"E 136.89 feet to a cotton picken spindle; N64°48'03"E 99.22 feet to a cotton picken spindle; N53°23'13"E 109.43 feet to a cotton picken spindle;

| | | |
|---|---|---|
| | | N63°50'29"E 76.68 feet to a cotton picken spindle; N80°23'52"E 63.06 feet to a cotton picken spindle; S81°15'24"E 70.79 feet to a cotton picken spindle; S58°41'28"E 108.61 feet to a cotton picken spindle. S55°44'29"E 161.71 feet to a cotton picken spindle: S67°27'57"E 111.23 feet to a cotton picken spindle; S59°53'00"E 83.98 feet to a cotton picken spindle: S78°11'53"E 28.19 feet to a cotton picken spindle: N82°53'31"E 34.49 feet to a cotton picken spindle; N71°34'54"E 95.94 feet to a cotton picken spindle; N73°46'06"E 191.12 feet to a cotton picken spindle; N62°49'20"E 90.28 feet to an iron pin; S83°25'16"E 53.80 feet to a cotton picken spindle; S52°49'28"E 59.88 feet to a cotton picken spindle; S62°09'05"E 52.02 feet to a cotton picken spindle; S68°30'52"E 46.22 feet to a cotton picken spindle; S67°10'34"E 34.06 feet to a cotton picken spindle; thence run N79°38'35"E 125.31 feet to an iron pin; thence run N00°08'09"E 330.12 feet to an iron pin; thence run N00°08'09"E 627.27 feet to an iron pin; thence run N89°55'16"E 1975.89 feet along the forty line to an iron pin; thence run S00°30'42"E 1307.82 feet along to an iron pin on the forty line; thence run S89°49'58"E 650.56 feet along the forty line back to the Point of Beginning. Said parcel contains 1243.38 acres, more or less, and being located in Sections 6 and 7, T-4-N, R-15-W and also Section 1, 2, and 12, T-4-N, R-16-W, Lamar County, Mississippi. |
| C16 | C-021 | Parcel 103-07-010.000 located at North Black Creek Road, Sumrall, Lamar County, MS, titled to Walters Holdings LLC. |
| | | Legally described as: Real property located on North Black Creek Road, Lamar County, Mississippi, more particularly described as: Parcel No. 103-07-010.000 Commence at a point in the centerline of a certain public road which point is 1149.2 feet West of the SE corner of NE ¼ of SE ¼ of Section 7, Township 4 North, Range 15 West; and run in a Northerly direction and along the centerline of said public road a distance of 613.8 feet; thence run West 647.3 feet, thence North 66 feet, thence West 687.5 feet to the West boundary line of NW ¼ of SE 1/4 , thence South along said West boundary line of said forty 663.3 feet to the SW corner of said NW ¼ of SE ¼; |

| | | |
|---|---|---|
| | | thence run East a distance of 1477.8 feet, more or less, back to the Point of Beginning, containing 21 acres more or less, and being situated in the NW ¼ of SE ¼ and the NE ¼ of SE ¼ of Section 7, Township 4 North, Range 15 West, Lamar County, Mississippi; together with all improvements thereon and appurtenances thereunto belonging. |
| C17 | C-022 | Parcel 103-06-003.002 located at 625 North Black Creek Road, Sumrall, Lamar County, MS, titled to Walters Holdings LLC. |
| | | Legally described as: <br><br> Real property located at 625 N. Black Creek Road, Lamar County, Mississippi, more particularly described as: <br><br> Parcel No. 103-06-003.002 <br><br> A parcel of land located in the NW ¼ of the SE ¼ of Section 6, Township 4 North, Range 15 West, Lamar County, Mississippi and being more particularly described as follows: <br><br> Commence at the NW corner of the SE ¼ of Section 6, Township 4 North, Range 15 West, Lamar County, Mississippi; thence run South 00 degrees 44 minutes 38 Seconds East along the East line of said SE ¼ for 33.67 feet to and for the POINT OF BEGINNING: thence continue South 00 degrees 44 minutes 38 Seconds East along the East line of said SE ¼ for 228.59 feet; thence run North 89 degrees 51 minutes 30 seconds East for 260.05 feet to the Centerline of North Black Creek Road; thence run 235.03 feet along said Centerline and along a curve to the right, said curve having a radius of 529.26 feet, an included angle of 25 degrees 26 minutes 37 seconds, a chord bearing of North 28 degrees 42 minutes 22 seconds West and a chord length of 233.10 feet; thence run North 17 degrees 18 minutes 19 seconds West along said Centerline for 24.96 feet; thence run South 89 degrees 51 minutes 30 seconds West for 143.63 feet back to the POINT OF BEGINNING. Said parcel contains 1.00 acres, more or less and is subject to North Black Creek Road Right-of-Way. |
| C18 | C-051 | Parcel 088-19003, Tallahatchie County, MS titled to TWQP, LLC. |
| | | Legally described as: |

| | | |
|---|---|---|
| | | Real property located in Tallahatchie County, Mississippi, more particularly described as:<br><br>Parcel No. 088-19003<br><br>The East Half of the Southeast Quarter and the Southwest Quarter of the Southeast Quarter of Section 19, Township 24 North, Range 2 East, First Judicial District, Tallahatchie County, Mississippi, being 130 acres, more or less, together with irrigation well located thereon.<br>SUBJECT TO<br>an easement to Tallahatchie County, Mississippi, for cleaning of ditch dated October 16, 1998, and recorded in Book 421 at Page 437. |
| C19 | N/A | 175 Poplar Springs Road, Cascilla, Tallahatchie County, MS, titled to Wade Walters and Co-conspirator 5's Irrevocable Trust. |
| | | Legally described as:<br><br>Real property located in Tallahatchie County, Mississippi, more particularly described as:<br><br>TRACT I:<br>All that part of W ½ of NE ¼ of Section 2, Township 23, Range 2 East lying North and East of the old Cascilla-Paynes Public Road, via of the Denman Hill, in Beat #3 of said County and being the land purchased by the (previous) Grantors herein from A.A. Murphree by deed recorded in Book 180 page 66 of the Deed Records of said County;<br><br>TRACT II:<br>Northeast Quarter of Northeast Quarter (NE ¼ of NE ¼) of Section 2, Township 23, Range 2 East and<br>Southeast Quarter of Southeast Quarter (SE ¼ of SE ¼) of Section 35; Southwest Quarter of Southwest Quarter (SW ¼ of SW ¼) of Section 36, in Township 24, Range 2 East;<br><br>TRACT III<br>All that part of the SW ¼ of the NW ¼ lying North of the Cascilla and Denman Public Road, and all of that part of the NW ¼ of the SW ¼ that lies North of the Cascilla and Denman Hill Public Road, containing 1 acre, more or less; all in Section 1, Township 23 North, Range 2 East.<br><br>TRACT IV |

Northwest Quarter of Northwest Quarter (NW ¼ of NW ¼) of Section1, Township 23 North, Range 2 East.

It is the intention of the grantor to covey the property designated by the following tax assessor parcel numbers: 12001013: 12001014: 12001015: 12002001: 09735003: 09736005

LESS AND EXCEPT:

Exception 1:

Beginning at the Southwest corner of the Southwest Quarter of the Northwest Quarter of Section 1, Township 23 North, Range 2 East, run thence 3.5 chains to the North right of way of the "Cascilla-Denman Hill" Road, thence run Northeasterly along said road r/o/w 2.5 chains to a point, this being the point of beginning of the parcel to be conveyed; thence run North 6.0 chains to a point; thence run East 8.4 chains; run thence South 2.0 chains, more or less, to aforesaid road r/o/w; thence run Southwesterly along said road r/o/w 9.0 chains, more or less, to the point of the beginning, and being a Lot in the SW ¼ of the NW ¼ of Section 1, Township 23 North, Range 2 East:

Reference: Warranty Deed dated January 14, 1972, recorded in Book 272 page 445

Exception 2:

Begin at the Southwest corner of the Northwest quarter of Section 1, Township 23 North, Range 2 East, First Judicial District, Tallahatchie County, Mississippi, thence East 200 feet; thence South 42 feet to the road; thence Southwest along road 272 feet; thence North 100 feet to the point of beginning, containing 1 acre, more or less, in the Southwest Quarter of Section 1 Township 23 North, Range 2 East, First Judicial District, Tallahatchie County, Mississippi

Reference: Warranty Deed dated November 30, 2005, recorded in Book 483 page 229

TRACT V:

All that part of the Northeast Quarter of the Southeast Quarter of Section 34, Township 24, Range 2 East, that lies North and East of Poplar Springs gravel road, being Five (5) acres, more or less.  Being in the First Judicial District, Tallahatchie County, Mississippi.

TRACT VI:

The West Half (W ½): and the Northeast Quarter (NE ¼) ; and the West Half of the Southeast Quarter of Section 35,

|  |  | Township 24 North, Range 2 East, First Judicial District, Tallahatchie County, Mississippi. Less and Except a water storage easement to Ascalmore Drg. District recorded in Book 215, page 94, land deed records, First Judicial District, Tallahatchie County, Mississippi. Also less and except the Poplar Springs Cemetery. TRACT VII The Northeast Quarter of the Southeast Quarter, Section 35, Township 24, North Range 2 East, First Judicial District, Tallahatchie County, Mississippi. |
|---|---|---|
| C20 | N/A | Two parcels titled to IPMSI Holdings, LLC Series C in Tallahatchie County, MS. |
|  |  | Legally described as: Real property located in Tallahatchie County, Mississippi, more particularly described as: The Northwest Quarter of the Northwest Quarter of Section 2 and the Northeast Quarter of the Northeast Quarter and that part of the Northwest Quarter of the Northeast Quarter lying East of the Swan Lake Lambert Cut-Off or branch of the Yazoo and Mississippi Valley Railroad, of Section 3; all being in Township 24 North, Range 1 West. LESS AND EXCEPT: The Northernmost 4.2676 acres of the above description. |

75.     The United States will also seek a forfeiture money judgment against **WALTERS** in the amount of $56,565,963, which represents the value of any property, real or personal, which WALTERS personally obtained, directly or indirectly, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of Count One, pursuant to Title 18, United States Code, Section 982(a)(7), and/or any property, real or personal, involved in Count Two, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

76.     If any of the property described above as being subject to forfeiture, as a result of any

act or omission of **WALTERS**:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property that cannot be subdivided without difficulty;

**WALTERS** shall forfeit to the United States any other property, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

Criminal Forfeiture, in violation of Title 18, United States Code, Section 982(a)(1) and (a)(7).

D. MICHAEL HURST, JR.
United States Attorney